Judge Daniel L. Dysart
This action, a commercial lease dispute, has been the subject of protracted litigation, resulting in numerous decisions over the years from this Court and from the Louisiana Supreme Court.[1] What remains *439 before this Court are concrete, distinct issues arising from a March 23, 2018 judgment appealed by plaintiffs-appellants, Kenneth H. Lobell and K.H.L. Canal, L.L.C. (hereafter, collectively, "Lobell").[2]
A separate appeal from this judgment was taken by defendants-appellants, Cindy Rosenberg Denn, Craig Rosenberg, Ricky Rosenberg, Harry Rosenberg, Lenore Rosenberg Bramblett, Ann Rosenberg Silberman, Carla Rosenberg Waggoner, Paige Rosenberg Hirschkop, Rosalie Rosenberg Samuelson, and Larry Rosenberg, and 2025 Canal Street, L.L.C.[3] (hereafter, collectively, the "Rosenbergs"), also decided this date.
As will be discussed more fully here, we have reviewed the record in its entirety and we affirm the trial court's judgment as to the issues raised in this appeal, finding no abuse of the trial court's discretion in failing to amend the judgment.[4] We also grant the Rosenbergs' Motion to Strike Lobell's reply brief, but decline to award sanctions.
FACTS AND PROCEDURAL BACKGROUND
This case has a lengthy history which has been detailed in several decisions and we summarize those facts as follows.
The lease at issue, concerning property located at 2025 Canal Street, New Orleans, Louisiana, was originally executed in 1957 between Simon and Herman H. Rosenberg to Eagle Enterprises, Inc. for a 60 year term, expiring on May 31, 2017.[5] In 1997, Mr. Lobell acquired the leasehold interest from the then-leaseholder and executed a "Consent and Agreement" ("lease") with the Rosenbergs (the heirs of Simon and Herman Rosenberg), by which Mr. Lobell assumed the terms of the original lease.[6] Among the requirements of the lease were the obligations of Lobell to pay monthly rent, to pay all ad valorem taxes, maintain insurance coverage of $2.6 million, place any insurance proceeds in a trust for the lessors to use to repair the building, repair damages within six months of the date of damage and generally keep the building in good repair.[7]
The leased building was damaged in the aftermath of Hurricane Katrina and disputes arose between Lobell and the Rosenbergs, and, in particular "the disbursement and use of insurance proceeds, the payment of rent, and repairs to the building."[8] The Rosenbergs then sent a default letter to Lobell on December 28, *440 2007, following which Lobell sent a partial payment of past due rents which the Rosenbergs refused to accept.[9] After sending a supplemental default letter to Lobell on February 12, 2008, further detailing the manner by which the Rosenbergs believed Lobell had violated the lease, the Rosenbergs sent Lobell a notice to vacate the premises on May 29, 2008.[10]
Lobell then instituted this action as a petition for a writ of possession and a possessory action for damages for the Rosenbergs' alleged failure to provide him the opportunity to cure the default; the Rosenbergs responded with an incidental demand based on Lobell's alleged breach of the lease.[11] Following a trial on the merits, the district court rendered judgment on August 22, 2013 in favor of the Rosenbergs and dismissed Mr. Lobell's claims. The court terminated the lease of the property and rendered a money judgment in favor of the Rosenbergs in the amount of $3,647,127.81."[12]
On appeal to this Court, the judgment dismissing Lobell's claims against the Rosenbergs was affirmed, although the Court vacated that portion of the trial court judgment that terminated the lease and awarded damages. This Court determined that the Rosenbergs had not properly terminated the lease because they had not afforded Lobell an opportunity to remedy his default.[13] Lobell sought review of this decision with the Louisiana Supreme Court.
After granting certiorari, the Louisiana Supreme Court reversed this Court's decision in Lobell II , finding that Lobell was not entitled to a cure period under the lease. The Court agreed with the trial court's findings that Lobell breached the lease in many manners and thus, "the Rosenbergs had ground[s] to terminate the lease."[14] Thus, the Court found no error in the trial court's determination that the lease had been properly terminated.[15] The Court remanded the matter to this Court to review the trial court's award of damages, as that issue had been pretermitted in the decision under review.[16]
After remand, this Court considered the trial court's August 22, 2013 judgment awarding damages to the Rosenbergs of the following amounts: past due rent of $193,749.69; $56,766.67 in ad valorem taxes; restoration costs of $3,230,126.72; and attorney's fees in the amount of $166,484.73.[17] In Lobell IV , this Court observed:
Mr. Lobell, on remand, reiterates his attack on the trial court's award of restoration costs but additionally and for the first time argues that we must now modify the awards of judicial interest and past due rent. We reject his arguments on these last two issues. His rent argument is premised upon the contention *441 that the Supreme Court implicitly overruled the trial court's termination of the lease and instead concluded that the Rosenbergs' December 28, 2007, January 31, 2007, and February 12, 2008 letters terminated the lease. Thus, he argues, the award must be recalculated to reflect that no rent was due after February 2008. The trial judge, however, rejected this assertion and we explicitly affirmed his ruling on this point. Mr. Lobell failed to seek review of this ruling with the Supreme Court, which noted that this aspect of the trial judge's ruling is final. And we refuse to reopen the matter.
Lobell IV , pp. 6-7, 184 So.3d 850 at 854. The Lobell IV Court then addressed the issue of the award for restoration costs, finding "that the award for restoration costs was sufficiently substantiated by the evidence and is not clearly wrong." Id. , p. 8, 184 So.3d at 855. Lobell applied to the Louisiana Supreme Court for a writ of certiorari to review this Court's opinion, which was denied on May 27, 2016. Lobell v. Rosenberg , 16-0669 (La. 5/27/16), 192 So.3d 744.
Thereafter, on June 21, 2016, Lobell filed a Motion to Amend Judgment under La. C.C.P. art. 1951, seeking to have the trial court's "original judgment" (the August 22, 2013 judgment) amended so as to correct "errors of calculation." He argued that the judgment improperly awarded rents beyond the period of August 2005 through February 2008, and improperly ordered Lobell to pay taxes beyond 2008, the date on which he argued that the lease was terminated as per the Supreme Court decision in Lobell III . He further argued that the August 22, 2013 judgment awarded judicial interest in derogation of our jurisprudence regarding interest on restoration awards.
In July, 2016, the Rosenbergs filed several motions, including:
- A Motion and Order for the release of proceeds held by FNBC Bank pursuant to an irrevocable letter of credit based on the finality of the judgment following the Supreme Court's May 27, 2016 denial of Lobell's application for a writ of certiorari and review of this Court's decision in Lobell IV ;
- A Motion to Assess and Order Payment of Post-Trial Unpaid Rent, Unpaid Taxes, Unpaid Insurance and Interest Thereon (hereafter, "Post-Trial Motions") by which the Rosenbergs maintained that they were entitled to rent, taxes and insurance which accrued from April 30, 2013 (the date the trial court determined that the lease had been terminated) and June 7, 2016 (the date on which the Lobell IV decision became final pursuant to La. C.C.P. art. 2166E[18] );
- A Motion to Confirm Calculation of Judicial Interest, seeking judicial interest on the August 22, 2013 judgment from the date of judicial demand (June 20, 2008) through the date on which the judgment is paid;
- A Motion for Sanctions pursuant to La. C.C.P. art. 863, alleging that Lobell's Motion to Amend Judgment violates article 863 ;[19] and *442 - A Motion to Assess and Order Payment of Post-Trial Attorney Fees and Interest Thereon.
The trial court heard arguments on the first two of the Rosenbergs' motions and by judgments dated September 6, 2016, the trial court granted the motion for the release of the proceeds held by FNBC Bank but denied the motion for post-trial unpaid rent, taxes, insurance and interest. The Rosenbergs then filed a Motion to Withdraw Funds from the Registry of the Court on September 23, 2016 and by judgment dated September 28, 2016, the trial court authorized the withdrawal of $4,750,000.00.
The remaining motions were heard by the trial court on August 31, 2016 and by judgment dated September 27, 2016, the trial court denied Lobell's motion to amend the judgment. The judgment further found the Rosenbergs' motion to confirm the calculation of judicial interest to be "unnecessary" on the basis that the "LSBA's Judicial Interest Calculator is an appropriate calculator;" the motion to confirm amount of court costs and interest thereon to be "unnecessary" because "[t]rial court costs and appellate court costs are what they are;" and granted the motion for payment of post-trial attorney's fees and interest "with the issue of reasonableness and the starting date for calculating judicial interest reserved" and to be decided by the court if the parties could not agree as to the amount.
The Rosenbergs filed a motion for a devolutive appeal of the September 6, 2016 judgment, while Lobell filed a motion for a devolutive appeal of the September 27, 2016 judgment. On appeal, this Court found that the judgments at issue were not final judgments, declined to convert the appeals into applications for supervisory writs and dismissed both appeals.[20]
In the interim and while Lobell V was pending in this Court, the trial court issued a judgment on September 12, 2017, granting in part and denying in part the motion for post-trial attorney's fees and interest. It awarded the Rosenbergs the sum of $393,536.28, with legal interest from the date of the judgment until paid.[21]
On November 21, 2107, the Rosenbergs filed a Third-Party Petition for Alternative Writ of Mandamus and for Cancelation of Lis Pendens , by which they sought to have Dale Atkins, as Clerk of Court for Orleans Parish, cancel a Notice of Lis Pendens which had been filed in 2012.
Thereafter, on January 8, 2018, the Rosenbergs filed a Motion to Re-schedule the hearing on its Third Party Petition. Lobell then filed a motion for the trial court to certify all of the judgments (at issue in Lobell V ) to be declared final, appealable judgments pursuant to La. C.C.P. art. 1915. All matters were considered by the trial court at a hearing on February 2, 2018 and by judgment dated March 23, 2018, the trial court issued a judgment which ordered the lis pendens to be canceled and ordered all parties to bear his/its respective costs and attorney's fees incurred in connection with the cancelation of the lis pendens . The trial court also ordered that its September 12, 2017 judgment on attorney's fees and interest *443 be designated as final. It then deemed its prior judgments (at issue in Lobell V ) to be final judgments; no substantive changes were made. Finally, the trial court ordered that legal interest shall accrue on unpaid attorney's fees as of September 12, 2017, which would continue to accrue until paid by Lobell.
Lobell timely appealed this Judgment.[22]
Motion to Strike
After this appeal was lodged and briefs were filed, Lobell filed a Reply Brief, in response to which the Rosenbergs filed a Motion to Strike on the basis that it was untimely, exceeded the page limitation allowed by the Local Rules for the Courts of Appeal, and contained "offensive ... false statements."
The Local Rules for the Courts of Appeal provide that a "reply brief ... of the appellant shall be filed not later than 10 calendar days after the appellee's brief is filed." Uniform Rules of Court, Rule 2-12.7. A reply brief "shall not exceed eighteen pages." Uniform Rules of Court, Rule 2-12.2 D(1).
Lobell's brief failed to meet either of these rules. The Rosenbergs' brief was filed on August 13, 2018. Under Rule 2-12.7, therefore, Lobell's reply brief was required to be filed no later than August 23, 2018. It was not filed until September 10, 2018, clearly well beyond the deadline for its filing. Likewise, Lobell's brief consists of thirty-two pages, almost twice the number allowed by Rule 2-12.2. At no time did Lobell move for an order of this Court permitting him to exceed the page limitation.
We note that under Rule 2-12.2, a motion to file a brief which exceeds this limitation "will be granted for extraordinary and compelling reasons." However, in this case, no motion to exceed the page limitation was filed. While there is case law indicating that, where a motion to exceed the page limitations would likely have been granted, due to the "length of the trial ... and the nature of the assigned errors," Vaughn v. Progressive Sec. Ins. Co ., 03-1105, p. 3 (La. App. 3 Cir. 3/2/05), 896 So.2d 1207, 1213, this is not the case presented here. We do not believe that a motion to exceed the page limitation would have been granted in this case, particularly considering that much of the argument is a rehashing (in some instances, almost verbatim) of the argument contained in the original brief. See also Colson v. Colfax Treating Co., LLC , 17-913, p. 4 (La. App. 3 Cir. 4/18/18), 246 So.3d 15, 19 ("This court has discretion to allow a reply brief when in the interest of justice. In the present matter, we do not find that the interests of justice are furthered by allowing this departure from our rules. The ... motion to strike the ... reply brief is granted.").
Because the reply brief was untimely and failed to meet the page limitation, coupled with our view that the interests of justice would not be served by considering the reply brief, we grant the Rosenbergs' motion to strike. However, we decline to order sanctions against Lobell. First, the Rosenbergs do not expressly seek an award of sanctions; rather, they simply state that this "Court may determine such egregious conduct by Appellants justifies sanctions." Second, an award of sanctions may only be made by an appellate court for frivolous appeal. See Hampton v. Greenfield , 618 So.2d 859, 862 (La. 1993) ("the ability to impose sanctions under art. 863 is limited to the trial court .... [T]he court of appeal's authority [is limited] to awarding damages solely [for]
*444 frivolous appeals."); see also Cannatella v. Cougle , 12-610, pp. 8-9 (La. App. 5 Cir. 5/16/13), 119 So.3d 94, 99, quoting Hampton ("Because the authority to impose sanctions under La. C.C.P. art. 863 is limited to the trial court, we cannot award sanctions under this article... An appellate court's authority to regulate conduct before it is governed by La. C.C.P. art. 2164, which provides in pertinent part, '[t]he [appellate] court may award damages for frivolous appeal.' ").
DISCUSSION
In this appeal, Lobell has not set forth any assignment of errors; rather, only issues are raised.[23] However, in the interest of justice, we will treat the issues as assignments of error. See , e.g. , Brown v. Hiaton , 03-0155, p. 2 (La. App. 4 Cir. 12/17/03), 863 So.2d 671, 674 ("we 'will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise,' " quoting Rule 1-3, Uniform Rules-Courts of Appeal ); Rochel v. Terrebonne Par. Sch. Bd. , 637 So.2d 753, 758 (La. App. 1 Cir. 5/20/94) ("[w]e treat LIGA's briefing of the issue as an assignment of error.").
Four out of five of Lobell's issues essentially challenge the trial court's August 22, 2013 judgment, which Lobell sought to amend through the June 21, 2016 Motion To Amend Judgment.[24] First, Lobell argues that the trial court erred in failing to amend the judgment under La. C.C.P. art. 1951 which allows a final judgment to be amended "to alter the phraseology of the judgment, but not its substance, or to correct errors of calculation." Lobell maintains that the Supreme Court's decision in Lobell III and this Court's decision in Lobell IV "changed the trial court judgment" which should be amended "so that it comports with the rulings of the two higher ... Courts." He contends that the judgment should be amended "to correct the miscalculation of damages." In this regard, Lobell argues that the judgment should have been amended because the trial court erred in awarding damages for restoration, in failing to reduce the amount of rent, and in awarding judicial interest.
As to the restoration damages, Lobell maintains that various valuations of the building at issue reflect that its value has *445 appreciated over time, and an award of restoration damages "would constitute a breathtaking windfall, and a profit not allowable under the lease agreement." He then argues that, even if such an award is permissible, the trial court erred in awarding replacement costs, as the proper measure of damages should have been actual cash value.
Lobell next argues that the trial court erred in failing to reduce the amount of rent and property taxes because the Supreme Court decision in Lobell III determined that the lease had been terminated as of March 2008, rather than 2013, as the trial court found.
With respect to the award of interest, Lobell argues that pre-judgment interest on an award for restoration costs is impermissible. Lobell then makes the statement that, as to attorney's fees, interest runs from the date of the award, not any other date, and as such, "defendant's claim for pre judgment interest on attorney's fees is simply not warranted by the case law."
Lastly, Lobell contends that the trial court erred in "cherry picking" language from the lease agreement. Although Lobell's argument on this point is entirely unclear, he suggests that "according to the plain language of the paragraph [concerning the distribution of insurance proceeds following a loss] 'the terms of the lease remain in effect .' " (Emphasis supplied). He likewise suggests that, under the terms of the lease, "the limits of plaintiffs' liability to the Lessor is $100,000 in insurance money," which amount "is to be held by Lessor in trust for the benefit of the Lessee for repairs to the building." (Emphasis supplied).
None of these issues is new to this Court and all have been previously considered and rejected. What Lobell proposes is not an amendment "to alter phraseology" or to "correct errors of calculation" in the August 22, 2013 judgment as contemplated by La. C.C.P. art. 1951. Rather, Lobell seeks to change the substance of the judgment, which has been challenged, reviewed and ruled on repeatedly by the courts.
As the Louisiana Supreme Court has made clear, our jurisprudence "is well established that Article 1951 contemplates the correction of a 'clerical error' in a final judgment, but does not authorize substantive amendments." Denton v. State Farm Mut. Auto. Ins. Co. , 08-0483, p. 6 (La. 12/12/08), 998 So.2d 48, 52. That is, a " 'judgment may be amended by the court where the amendment takes nothing from or adds nothing to the original judgment.' " Id. , pp. 6-7, 998 So.2d at 52, quoting Bourgeois v. Kost , 02-2785, p. 5 (La. 5/20/03), 846 So.2d 692, 595. Thus, "there is no specific grant of statutory authority for a trial court to clarify substantive provisions of a final judgment." Id. , p. 7, 998 So.2d at 53. The Denton Court found that "an amendment to a judgment which increases the interest amount [owed under] an insurance policy not of record, constitutes a substantive amendment that La.Code Civ. Proc. art.1951 prohibits." Id.
In the instant matter, the award of damages for restoration costs was addressed by this Court in Lobell IV , where we "reviewed the record and the exhibits introduced at trial, and [found] that the award for restoration costs was sufficiently substantiated by the evidence and is not clearly wrong." Lobell IV , p. 8, 184 So.3d at 855. When the Supreme Court denied Lobell's application for a writ of certiorari to review this Court's decision in Lobell IV , that judgment became final. See Ave. Plaza, L.L.C. v. Falgoust , 96-0173, p. 8 (La. 7/2/96), 676 So.2d 1077, 1080 (a judgment affirming an eviction "was a final judgment which became res judicata and conclusive between the parties when it was *446 rendered, with the exception of appeal or other direct review. LSA-R.S. 13:4231. The judgment acquired the authority of the thing adjudged and became final and definitive when this court denied certiorari."); Jenkins v. Jackson , 16-482, p. 18 (La. App. 5 Cir. 2/22/17), 216 So.3d 1082, 1094, writ denied , 17-0652 (La. 9/6/17), 224 So.3d 984, quoting Poole v. Fuselier , 15-1317, p. 7 (La. App. 1 Cir. 10/28/16), 213 So.3d 18, 23 ("a final judgment becomes final and definitive and acquires the authority of the thing adjudged ... if the Supreme Court denies an application for certiorari ....").
We, therefore, find no merit to Lobell's argument that the trial court erred in refusing to amend the judgment awarding restoration costs. Under Lobell's interpretation of our codal articles and our jurisprudence, no judgment would ever be final and definitive; and repeated challenges raising the identical issues, despite repeated rejections by the courts, would be permissible.
We likewise find that Lobell is foreclosed from raising issues concerning the award of past-due rent and interest. In Lobell IV , Lobell raised the very same issues of past-due rent and the award of interest. This Court refused to consider those issues, stating:
[Lobell] for the first time argues that we must now modify the awards of judicial interest and past due rent. We reject his arguments on these last two issues. His rent argument is premised upon the contention that the Supreme Court implicitly overruled the trial court's termination of the lease and instead concluded that the Rosenbergs' December 28, 2007, January 31, 2007, and February 12, 2008 letters terminated the lease. Thus, he argues, the award must be recalculated to reflect that no rent was due after February 2008. The trial judge, however, rejected this assertion and we explicitly affirmed his ruling on this point. Mr. Lobell failed to seek review of this ruling with the Supreme Court, which noted that this aspect of the trial judge's ruling is final. And we refuse to reopen the matter. We further observe that Mr. Lobell's interest argument was not presented to the trial judge. Generally, issues not raised in the trial court will not be given consideration for the first time on appeal. See Rule 1-3, Uniform Rules-Courts of Appeal ; Scott v. Zaheri , 14-0726, p. 14 (La. App. 4 Cir. 12/3/14), 157 So.3d 779, 788.
Lobell IV , pp. 6-7, 184 So.3d at 854.
The finality of the trial court's judgment as to past-due rent and interest cannot seriously be contested. As we have determined that the award for restoration costs is final, so, too, is the award for past due rent and the award of judicial interest on the award of attorney's fees. This Court noted in Lobell IV that:
Mr. Lobell, in his initial appeal of the trial court's judgment, did not ask us to vacate or modify the trial court's awards to 2025 Canal for past due rent, unpaid ad valorem taxes, interest, and attorney's fees. Rather, he sought only to modify the trial court's award of restoration costs."
Lobell IV , p. 5, 184 So.3d at 854. The time for challenging the award for past-due rent and judicial interest was in Lobell's initial appeal and we, thus, decline to address this issue. See , e.g. , Square v. Hampton , 13-1680, p. 17 n.23 (La. App. 4 Cir. 6/4/14), 144 So.3d 88, 99 ("appellate courts will not consider issues raised for the first time, which were not pleaded in the trial court below and which the trial court has not addressed"); State in Interest of D.A. , 14-1078, p. 2 (La. App. 3 Cir. 3/4/15), 2015 WL 904755 (unpib.)("[a]n appellate court lacks appellate jurisdiction to address issues regarding a judgment which has not been *447 timely appealed."). Lobell cannot resurrect this issue simply by filing a motion to amend a judgment which is final in its entirety.
As to Lobell's contention that the trial court "cherry pick[ed]" certain elements of the lease, while ignoring other elements, the objective of this argument is entirely unclear. To the extent that Lobell seeks a determination by this Court, as he suggests in his brief, that "the terms of the lease remain in effect," as the decisions of this Court and the Supreme Court have repeatedly made clear (and as Lobell concedes in other parts of his brief), there is no question that the lease was terminated and we need not address this argument.
Turning to Lobell's remaining issue, Lobell argues that the trial court erred "by exhibiting a lack of impartiality" and in allowing the Rosenbergs to obtain funds from the registry of the court in satisfaction of their judgment.[25] Lobell argues that, because his counsel contacted the trial court and advised that the September 26, 2016 judgment would be appealed, the trial court prematurely and improvidently disbursed the funds to the Rosenbergs.
The record reflects that, on September 23, 2016, the Rosenbergs filed a Motion to Withdraw Funds from the Registry of the Court. On September 26, 2013, the trial court issued an order that $4,750,000 be withdraw from the court's registry. We find no error in that ruling.
As discussed herein, Lobell IV became final on June 7, 2016, when the Supreme Court denied certiorari. As we have further found, all aspects of the judgment at issue in Lobell IV became final at that time as well (despite Lobell's Motion to Amend that judgment) because La. C.C.P. art. 2166 E provides that "[w]hen an application for certiorari to the supreme court is timely filed, a judgment of the court of appeal becomes final and definitive after a delay of five days, exclusive of legal holidays, commencing to run on the day after the clerk has mailed the denial by the supreme court of the application for certiorari."
Accordingly, the trial court was authorized to release the funds being held in the registry of the court in satisfaction of the final judgment. See , e.g. , Bertrand v. Richard , 94-274, p. 4 (La. App. 3 Cir. 10/5/94), 643 So.2d 383, 385 ("Suspensive appeal bonds are not deposited by the losing litigant with no strings attached; they are tendered to the court for disbursement after the merits are determined, even if by forfeit. When ... the judgment awarding the sum in favor of plaintiff in the lower court became final ... the amount represented by the previously suspensively appealed bond reverted to plaintiff in satisfaction of the lower court judgment.").
As a final note, in their appellate brief, the Rosenbergs suggest that "Lobell should be sanctioned under La. C.C.P. art. 2164 because he asks this Court to violate its duty, assume jurisdiction it lacks, re-try this 2008 case post-Final judgment, and issue a decision that would be an absolute nullity."
Under Article 2164, "[t]he court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, *448 against any party to the suit, as in its judgment may be considered equitable."
This Court has noted that damages for a frivolous appeal may be awarded by an appellate court " 'if the appellant is trying to 'delay the action' or 'if the appealing counsel does not seriously believe the law he or she advocates.' " Sullivan v. Malta Park , 16-0875, p. 5 (La. App. 4 Cir. 1/31/17), 215 So.3d 705, 709, quoting Hunter v. Maximum Grp. Behavioral Servs., Inc. , 10-0930, p. 6 (La.App. 4 Cir. 3/16/11), 61 So.3d 735, 739 (internal quotation omitted). In Sullivan , we also noted:
" '[A]ppeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be granted' due in part to the possible chilling effect on the appellate process." Johnson v. Johnson , 08-0060, pp. 5-6 (La.App. 4 Cir. 5/28/08), 986 So.2d 797, 801, quoting Tillmon v. Thrasher Waterproofing , 00-0395, p. 8 (La. App. 4 Cir. 3/28/01), 786 So.2d 131, 137. Likewise, because the statute allowing the imposition of damages for frivolous appeal is penal in nature, it "must be strictly construed in favor of the appellant." Hunter , 10-0930, p. 6, 61 So.3d at 739.
Id. , pp. 5-6, 215 So.3d at 709.
We are not prepared to find that Lobell's arguments are wholly without any basis. We therefore decline to award sanctions.
CONCLUSION
For the reasons set forth more fully herein, we affirm the trial court's judgment as to all issues raised in this appeal. We further grant the Rosenbergs' motion to strike Lobell's reply brief, although we decline to award sanctions against Lobell in connection with this appeal, including the Rosenberg's request for sanctions pertaining to Lobell's reply brief.
AFFIRMED
LOBRANO, J., CONCURS IN PART, DISSENTS IN PART, AND ASSIGNS REASONS
LOBRANO, J., CONCURS IN PART, DISSENTS IN PART, AND ASSIGNS REASONS.
I respectfully concur in part and dissent in part. Considering only the issues raised by Lobell in this appeal, I concur in the majority's affirmation of the district court's March 23, 2018 judgment.[1]
I dissent from the majority's denial of sanctions to the Rosenbergs. The majority relies on Lobell's "perspective," that Lobell subjectively believes his arguments do not wholly lack any basis. This subjective standard applied by the majority is incorrect.
"Damages for frivolous appeals, like sanctions at the trial court level, are utilized to curtail the filing of appeals that are intended to delay litigation, harass another party, or those that have no reasonable basis in fact or law." Hunter v. Maximum Grp. Behavioral Servs., Inc. , 2010-0930, p. 6 (La. App. 4 Cir. 3/16/11), 61 So.3d 735, 739 (quotation omitted). La. C.C.P. art. 2164 and the jurisprudence of this State empower the appellate court to award frivolous appeal damages "if the appellant is trying to delay the action", if the appeal "does not present a substantial legal question," or "if the appealing counsel does not seriously believe the law he *449 or she advocates." Id. (quotations omitted). Likewise, La. C.C.P. art. 863"require[s] the attorney or litigant who signs a pleading to make an objectively reasonable inquiry into the facts and the law. Subjective good faith does not satisfy the duty of reasonable inquiry." Diesel Driving Acad., Inc. v. Ferrier , 563 So.2d 898, 902 (La. App. 2nd Cir. 1990).
As acknowledged in the majority opinion, Lobell's brief is replete with arguments that have been previously considered and rejected by this Court. I find this appeal objectively frivolous. The Rosenbergs should be awarded damages for frivolous appeal in the amount of $2,500.00.

The various decisions from the Courts are referenced throughout this opinion. For ease of reference, they will be referred to as follows:
- Lobell v. Rosenberg , 10-0983, (La. App. 4 Cir. 4/6/11), 62 So.3d 823 ("Lobell I ").
- Lobell v. Rosenberg , 14-0060, (La. App. 4 Cir. 1/7/15), 158 So.3d 874writ granted , 15-0247 (La. 5/1/15), 169 So.3d 366, and rev'd , 15-0247 (La. 10/14/15), 186 So.3d 83 ("Lobell II ").
- Lobell v. Rosenberg , 15-0247, (La. 10/14/15), 186 So.3d 83 ("Lobell III ").
- Lobell v. Rosenberg , 14-0060, (La. App. 4 Cir. 1/27/16), 184 So.3d 850, writ denied , 16-0669 (La. 5/27/16), 192 So.3d 744. ("Lobell IV ").
- Lobell v. Rosenberg , 17-0111 (La. App. 4 Cir. 10/4/17), 228 So.3d 1241 ("Lobell V ").

Mr. Lobell transferred his interest in the property to K.H.L. Canal, L.L.C., on May 4, 1998 through an Act of Contribution of Property. Lobell II, p. 4, 158 So.3d at 878. (Footnote omitted).

The Rosenbergs transferred their collective interest in the property to 2025 Canal St., L.L.C. on May 30, 2008. Lobell I , p. 7, 62 So.3d at 827.

See , e.g. , Oreck v. Oreck , 513 So.2d 1237, 1238 (La. App. 4 Cir. 1987) ("correction of a judgment rests within the sound discretion of the trial judge").

Lobell III , p. 1, 186 So.3d at 84.

Lobell III , p. 2, 186 So.3d at 85.

Lobell III , pp. 2-3, 186 So.3d at 85.

Lobell III, p. 3, 186 So.3d at 85.

Lobell III, p. 3, 186 So.3d at 85.

Lobell also claimed damages for anticipatory breach of contract, and wrongful eviction during the lease term, while the Rosenbergs alleged that Lobell "breached the lease and consent agreement by failing to pay rent and taxes, maintain $2.6 million in hazard insurance, place insurance proceeds in trust, spend the insurance proceeds for the purpose of repairing the building and improvements, and keep improvements in good repair." Id. , pp. 4-5, 186 So.3d at 86-7.

Lobell III , p. 4, 186 So.3d at 86.

Lobell III , p. 5, 186 So.3d at 87.

Lobell III , p. 7, 186 So.3d at 88.

Lobell III , p. 12, 186 So.3d at 91.

Lobell III , p. 12, 186 So.3d at 91.

Lobell III , p. 12, 186 So.3d at 91.

Lobell IV , pp. 4-5, 184 So.3d at 853-54.

La. C.C.P. art. 2166 E provides that "[w]hen an application for certiorari to the supreme court is timely filed, a judgment of the court of appeal becomes final and definitive after a delay of five days, exclusive of legal holidays, commencing to run on the day after the clerk has mailed the denial by the supreme court of the application for certiorari."

La. C.C.P. art. 863 D provides that "[i]f, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees."

Lobell V , 228 So.3d at 1241.

It is unclear from the judgment (and the trial court's Reasons for Judgment) what was partially denied by the trial court. No appeal was taken from this judgment.

As noted, the Rosenbergs appealed the March 23, 2018 judgment, which is addressed in appeal number 2018-CA-0600, decided this date as well.

We note that Lobell's brief fails to comply with Rule 2-12.4 A of the Uniform Rules for the Courts of Appeal insofar as it fails to include a table of contents, a table of authorities, a jurisdictional statement and an assignment of the alleged errors of the trial court. Nor does Lobell's brief attach a copy of the trial court's judgment as required by Rule 2-12.4 B(1).

Those issues are phrased as follows: (1) "Did the trial court err in determining that Appellant's Motion to Amend judgment was without merit without giving any reason therefore, and was Appellant entitled to the relief sought by its Motion to Amend given that neither the trial Court or [sic] the 4th Circuit Court of appeals [sic] previous panel fully implemented the Supreme Court's judgment in this matter;" (2) Did the trial Court Err by simply applying the judicial interest calculator in derogation of Gravolet v. Fair Grounds ..., "given that the damages issued were for restoration where Gravolet states that granting damages for restoration and legal interest is double dipping and deeming a review of the Gravolet precedent as UNNECCESARY?;" (3) "Did the trial Court err by failing to institute the full order of the Louisiana Supreme Court by failing to reduce the amount of rent given that the Supreme Court's decision terminating the lease in March of 2008, and finding that plaintiff was evicted rather than judicially termination [sic] the lease in 2013 as the trial court did;" and (4) "Did the trial court err by cherry picking certain language of the lease between the parties and not enforcing all other provisions of the lease and the consent and agreement between the parties?"

We note that no argument is made with respect to the trial court's "impartiality" and there is no suggestion that this Court make a finding on this issue; rather, this statement appears to be nothing more than an aside. We decline to address, or to even comment, on this statement.

I dissent separately in the companion appeal, Lobell v. Rosenberg , 2018-0600 (La. App. 4 Cir. 12/19/18), --- So.3d ----, 2018 WL 6683527, in which I explain that I would reverse, in part, the March 23, 2018 judgment, with respect to the district court's denial of post-trial rent, insurance, taxes, and interest to the Rosenbergs. Those issues are not raised in Lobell's appeal.